IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| OVERLOOK GARDENS PROPERTIES, LLC, CREEKWOOD APARTMENTS, LLC, INVERNESS II, LLC, and GREYSTONE FARMS APARTMENT COMMUNITY, LLC, | * | |
| Plaintiffs, | * | |
| vs. | * | CASE NO. 4:17-CV-101 (CDL) |
| ORIX USA, L.P., RED CAPITAL GROUP, LLC, RED MORTGAGE CAPITAL, LLC, RED CAPITAL MARKETS, LLC, and RED CAPITAL PARTNERS, LLC, | * | |
| Defendants. | * | |

O R D E R

The pending motions to remand (ECF No. 8) and transfer (ECF No. 6) present several choice of forum, removal, and remand issues. Plaintiffs filed their original complaint in the State Court of Muscogee County, Georgia, alleging claims arising from and related to separate but connected contracts entered into by Plaintiffs and Defendant Red Mortgage Capital, LLC ("Red Mortgage"). Relying upon diversity of citizenship, Defendants removed the state court action to this Court and now seek transfer to the United States District Court for the Northern District of Texas based on a forum selection clause in one of the contracts. But the contracts contain conflicting forum

EXHIBIT 1

selection clauses. And Plaintiffs, maintaining that the parties agreed on which contract's terms would control if such a conflict arose, argue that the superseding forum selection clause requires Plaintiffs' claims to be litigated in a Georgia state court. Thus, Plaintiffs seek remand of this action to the State Court of Muscogee County.

The Court finds that Plaintiffs and Red Mortgage entered into contracts that require Plaintiffs' claims to be litigated in a Georgia state court, and therefore, Red Mortgage had no right to remove this action to this Court. Because Red Mortgage had no right to remove this action, it had no authority to consent to the removal of this action by its co-Defendants, who were not parties to the contracts with Plaintiffs. Without Red Mortgage's consent to removal, the other Defendants likewise had no right to remove this action to this Court. Accordingly, Plaintiffs' motion to remand (ECF No. 8) is granted, and Defendants' motion to transfer (ECF No. 6) is denied.

FACTUAL ALLEGATIONS

Plaintiffs develop apartment complexes in Georgia. Plaintiffs financed their projects with loans through the U.S. Department of Housing and Urban Development's Multifamily Accelerated Processing ("MAP") program. Plaintiffs enlisted the services of Red Mortgage to assist them with the loan process. As explained in more detail below, Red Mortgage procured HUD's

Case 4:17-cv-00101-CDL Document 31 Filed 11/01/17 Page 3 of 20

commitment to insure each loan, and then Red Mortgage served as the lender on the loans. For its services, Plaintiffs paid Red Mortgage a loan origination fee. Plaintiffs contend that during this process, Red Mortgage breached its contract with Plaintiffs and that Red Mortgage, along with its parent and sister companies, engaged in fraud and violated the Georgia Racketeer Influenced and Corrupt Organizations Act.

**I. The Loan Process**

After HUD approved Plaintiffs' MAP program applications and issued firm commitments for mortgage insurance, Red Mortgage sent a "Lender's Commitment Letter" to the borrower. *See* Defs.' Mot. to Transfer Ex. 2(A), Greystone Farms Apartment Community, LLC Lender's Commitment Letter (July 13, 2012), ECF No. 6-2 at 5-18 ("Greystone Letter"); Defs.' Mot. to Transfer Ex. 2(B), Overlook Gardens Properties, LLC Lender's Commitment Letter (Oct. 23, 2013), ECF No. 6-2 at 20-34 ("Overlook Letter"); Defs.' Mot. to Transfer Ex. 2(C), Inverness II, LLC Lender's Commitment Letter (June 5, 2015), ECF No. 6-2 at 36-63 ("Inverness Letter"); Defs.' Mot. to Transfer Ex. 2(D), Creekwood Apartments, LLC Lender's Commitment Letter (Sept. 8, 2015), ECF No. 6-2 at 65-76 ("Creekwood Letter"). In each letter, Red Mortgage committed to make a loan to the borrower on the terms and conditions set forth in the Lender's Commitment Letter. *See, e.g.*, Overlook Letter at 1, ECF No. 6-2 at 20.

EXHIBIT 1

Case 4:17-cv-00101-CDL Document 31 Filed 11/01/17 Page 4 of 20

The letter "describes the terms under which a debtor-creditor relationship will be established in this transaction." *E.g.*, *id.* at 4, ECF No. 6-2 at 23. A number of "general conditions" were incorporated into each Lender's Commitment Letter. The conditions include a forum selection clause and a choice of law provision. *E.g.*, Overlook Letter Ex. 2, General Conditions ¶ 26, ECF No. 6-2 at 30. Those conditions also state that Red Mortgage may fund the loan by the issuance and sale of Government National Mortgage Association mortgage-backed securities. *E.g.*, Overlook Letter Ex. 2, General Conditions ¶ 12, ECF No. 6-2 at 26. According to Plaintiffs, that is how the loans were funded. Compl. ¶¶ 121-122, 135, ECF No. 1-2.

After Red Mortgage issued the Lender's Commitment Letter, Red Mortgage offered pricing terms to the borrower in a "rate lock letter." If the borrower accepted those pricing terms and executed the rate lock letter, then the borrower was bound to close on the loan if Red Mortgage could provide the pricing terms set forth in the rate lock letter—in other words, an interest rate equal to or less than the interest rate quoted in the rate lock letter. Compl. ¶¶ 125-126; *see* Overlook Letter at 2 ¶ B(2), ECF No. 6-2 at 6 (explaining pricing terms process); Compl. Ex. 14, Overlook Gardens Rate Lock Letter (Nov. 1, 2013), ECF No. 1-3 at 62.

EXHIBIT 1

Plaintiffs allege that Defendants led them to believe that Red Mortgage would work "to secure the best possible financial deal for the Borrower" but actually worked "to induce the Borrower to unknowingly accept an interest rate higher than the prevailing market interest rate." Compl. ¶ 22. According to Plaintiffs, the interest rate quoted in each rate lock letter was higher than the rate Red Mortgage knew investors would be willing to accept in exchange for funding the mortgage. *Id.* ¶ 125. Plaintiffs further allege that Defendants received additional compensation from investors when they induced borrowers to accept an above par interest rate; Plaintiffs refer to this additional compensation as "yield spread premium." *Id.* ¶¶ 26-28. Plaintiffs assert that Defendants intended to provide Plaintiffs with an above par interest rate and that Defendants did not disclose these things to Plaintiffs. *Id.* ¶¶ 26-28, 127-131.

Once each borrower executed the rate lock letter, Red Mortgage issued the borrower a confirmation letter stating that Red Mortgage locked the borrower's interest rate at a slightly lower rate than Red Mortgage quoted in the rate lock letter. *Id.* ¶ 132. But, according to Plaintiffs, that interest rate was still higher than what was available had Red Mortgage actually worked to secure the best financial deal for the borrowers. *Id.* ¶¶ 134, 136-138. Again, Plaintiffs contend that Red Mortgage

Case 4:17-cv-00101-CDL Document 31 Filed 11/01/17 Page 6 of 20

receives additional, indirect compensation if it can induce the borrower to accept an above par interest rate because investors pay Red Mortgage more to purchase the loan than they would have paid to purchase a loan at par value. *Id.* ¶ 136. According to Plaintiffs, Red Mortgage is required to provide Plaintiffs with full disclosure of all loan fees but failed to disclose the yield spread premiums they received from the transactions with Plaintiffs. *Id.* ¶¶ 159-160. Specifically, Plaintiffs contend that Red Mortgage should have disclosed the yield spread premium in the Lender's Commitment Letter and also in a HUD form that was executed at the time of closing. *Id.* ¶ 184.

At the closing of the loans, Plaintiffs executed promissory notes and security instruments to Red Mortgage as the lender. Plaintiffs promised to pay the interest rate that was established through the pricing terms process described above. Plaintiffs relied on Red Mortgage's representations regarding the best available interest rate and the compensation collected by Red Mortgage in connection with the loans. *Id.* ¶¶ 128-130, 149. Plaintiffs allege that because they relied on Defendants' alleged misrepresentations regarding the interest rates, they "are bound to pay interest rates in excess of what they otherwise would have agreed to pay and which results in hundreds of thousands of dollars in excess interest paid over the life of the loans." *Id.* ¶ 182. Like the Lender's Commitment Letters,

Case 4:17-cv-00101-CDL Document 31 Filed 11/01/17 Page 7 of 20

the notes and security instruments contain forum selection clauses.

**II. The Forum Selection Clauses**

A. Lender's Commitment Letters

*1. Lender's Commitment Letter for Overlook Gardens Loan, Inverness II Loan, and Creekwood Loan*

The Lender's Commitment Letters for the loans to Overlook Gardens Properties, LLC, Inverness II, LLC, and Creekwood Apartments, LLC state:

> By its acceptance of the Lender's Commitment, the Borrower agrees that (a) it was negotiated, made and issued by the Lender in the State of New York; (b) any action brought hereunder shall only be brought in the federal or local courts of Dallas County, Texas; and (c) the rights and obligations of the parties shall be determined in accordance with applicable federal law and, to the extent that State law applies, the law of New York.

Overlook Letter Ex. 2, General Conditions ¶ 26, ECF No. 6-2 at 30; Inverness Letter Ex. 2, General Conditions ¶ 26, ECF No. 6-2 at 56 & 58; Creekwood Letter Ex. 2, General Conditions ¶ 26, ECF No. 6-2 at 74-75.

*2. Greystone Farms Lender's Commitment Letter*

The Lender's Commitment Letter for the loan to Greystone Farms Apartment Community, LLC states:

> By its acceptance of the Lender's Commitment, the Borrower agrees that (a) it was negotiated, made and issued by the Lender in the State of Ohio; (b) any action brought hereunder shall only be brought in the federal or local courts of Ohio; and (c) the rights and obligations of the parties shall be determined in

Case 4:17-cv-00101-CDL Document 31 Filed 11/01/17 Page 8 of 20

> accordance with applicable federal law and, to the extent that State law applies, the law of Ohio.

Greystone Letter Ex. 2, General Conditions ¶ 26, ECF No. 6-2 at 14.

B. Notes and Security Instruments

The Security Instruments executed by each of the Plaintiffs to Red Mortgage state that the borrower (Plaintiffs) and Lender (Red Mortgage) agree to a number of covenants, including the following:

> Borrower agrees that any controversy arising under or in relation to the Note or the Security Instrument shall be litigated exclusively in the Property Jurisdiction [jurisdiction in which the Land is located] except as, so long as the Loan is insured or held by HUD and solely as to rights and remedies of HUD, federal jurisdiction may be appropriate pursuant to any federal requirements. The state courts, and with respect to HUD's rights and remedies, federal courts, and Governmental Authorities in the Property Jurisdiction, shall have exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the Indebtedness, or the Security Instrument. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

Greystone Farms Security Deed ¶ 30, ECF No. 11-4 at 48; Overlook Gardens Security Deed ¶ 30, ECF No. 11-1 at 46; Creekwood Security Deed ¶ 30, ECF No. 11-2 at 44-45; Inverness II Security Deed ¶ 30, ECF No. 11-3 at 44-45. The notes Plaintiffs executed contain a nearly identical forum selection clause. Greystone Farms Note ¶ 16, ECF No. 11-4 at 7; Overlook Gardens Note ¶ 16,

ECF No. 11-1 at 7; Creekwood Note ¶ 16, ECF No. 11-2 at 7-8; Inverness II Note ¶ 16, ECF No. 11-3 at 7-8. Each of the properties is located in Georgia. Overlook Gardens Security Deed Ex. A, ECF No. 11-1 at 60; Creekwood Security Deed Ex. A, ECF No. 11-2 at 61-64; Inverness II Security Deed Ex. A, ECF No. 11-3 at 60-63; Greystone Farms Security Deed Ex. A, ECF No. 11-4 at 64-65.

C. The "Inconsistencies" Clause

Each Lender's Commitment Letter contains the following "inconsistencies" clause:

> In the event of any inconsistencies between the terms and conditions of this Lender's Commitment (inclusive of all Exhibits) and the terms and conditions of the FHA Commitment or of the Loan Documents, the terms and conditions of the FHA Commitment or the Loan Documents shall supersede the terms and conditions of this Commitment. Notwithstanding anything in this Commitment to the contrary, any requirements necessary to conform to the terms of the FHA Commitment or to secure the issuance of the Certificates, though not specifically mentioned herein, shall be deemed a requirement hereunder.

Greystone Letter Ex. 2, General Conditions ¶ 31, ECF No. 6-2 at 15; Overlook Letter Ex. 2, General Conditions ¶ 31, ECF No. 6-2 at 31; Inverness II Letter Ex. 2, General Conditions ¶ 31, ECF No. 6-2 at 58 & 60; Creekwood Letter Ex. 2, General Conditions ¶ 31, ECF No. 6-2 at 75-76.

**III. Plaintiffs' Claims**

Plaintiffs assert three categories of state law claims against Defendants. First, Plaintiffs allege a claim under the

EXHIBIT 1

Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO"), O.C.G.A. § 16-14-1, *et seq.* Second, Plaintiffs assert state law fraud claims. Third, Plaintiffs assert a breach of contract claim. In a nutshell, Plaintiffs' Georgia RICO and fraud claims are based on their allegation that Defendants had a fraudulent scheme to induce Plaintiffs to enter into loan agreements that required them to pay interest rates that were higher than what they otherwise would have agreed to pay. Plaintiffs' breach of contract claim is based on Defendants' alleged breach of the terms of their loan origination agreements with Plaintiffs, which allegedly led Plaintiffs to execute promissory notes and security deeds that obligate them to pay interest rates that are higher than what they otherwise would have agreed to pay.

DISCUSSION

**I. Motion to Remand and Motion to Transfer**

A forum selection clause can be enforced through a motion to transfer under 28 U.S.C. § 1404(a). *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tx.*, 134 S. Ct. 568, 579 (2013) (explaining that § 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district"). And, in the context of an action removed from state court, a forum selection clause can be enforced through a motion to remand. *See, e.g.*, *Ocwen Orlando*

*Holdings Corp. v. Harvard Prop. Tr., LLC*, 526 F.3d 1379, 1381 (11th Cir. 2008) (affirming remand of an action based on a forum selection clause that constituted a contractual waiver of the defendant's right to remove).

Here, the parties do not dispute that a forum selection clause governs where Plaintiffs' claims against Defendants must be litigated. They also do not dispute that the potentially applicable forum selection clauses all contain mandatory language stating that the claims "shall" be brought in a particular forum. They strongly disagree on which forum selection clause applies to Plaintiffs' claims.

To resolve this issue, the Court must first determine whether Plaintiffs' claims arise under or are related to the Lender's Commitment Letters, whether Plaintiffs' claims arise under or are related to the notes and security instruments, or whether Plaintiffs' claims arise under or are related to both the commitment letters and the notes and security instruments. And, if Plaintiffs' claims arise under or relate to both agreements, the Court must determine which forum selection clause applies. "To determine if a claim falls within the scope of a clause, [the courts] look to the language of the clause." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012). "A claim 'relates to' a contract when 'the dispute occurs as a fairly direct result of the performance of

Case 4:17-cv-00101-CDL Document 31 Filed 11/01/17 Page 12 of 20

contractual duties.'" *Id.* at 1340-41 (quoting *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001)).[1] In determining whether a claim arises out of or is related to a contract, the Court must focus "on whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties." *Telecom Italia,* 248 F.3d at 1116. "Disputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by" a forum selection clause or an arbitration clause. *Id.*;[2] *cf. Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384-

[1] In *Byers*, the real estate market collapsed shortly after the buyer purchased a lot in the Bahamas. The buyer accused the mortgage lender of appraisal fraud to inflate the amount of the loan. The lender moved to dismiss based on a forum selection clause in the lot purchase agreement between the buyer and the seller. The Eleventh Circuit concluded that the buyer's claim for appraisal fraud by the mortgage lender—which was not even a party to the lot purchase contract—was "not 'a fairly direct result of the performance of contractual duties' under the lot purchase contract." *Byers*, 701 F.3d at 1341 (quoting *Telecom Italia,* 248 F.3d at 1116). In contrast, here, the parties' dispute is a direct result of Plaintiffs being induced to execute the note and security instruments. *Byers* is thus distinguishable.

[2] In *Telecom Italia*, a wholesale telecommunications company accused its service provider of breaching their service agreement. The wholesale telecommunications company also accused the service provider's subsidiary of tortious interference with the service contract. The wholesale telecommunications company did have a contract to lease circuits from the subsidiary, and the subsidiary argued that the arbitration clause in that agreement applied. The Eleventh Circuit, however, found that the tortious interference claim did not arise out of the circuit lease agreement, noting that the claim could have arisen "even if [the subsidiary] had no contractual relationship with [the wholesale telecommunications company]." *Telecom Italia,* 248 F.3d at 1116. *Telecom Italia* is distinguishable because here, none of Plaintiffs' claims arise solely under the lender's commitment letters,

EXHIBIT 1

Case 4:17-cv-00101-CDL Document 31 Filed 11/01/17 Page 13 of 20

86 (11th Cir. 1996) (finding that the plaintiff stock sellers' fraud and fraudulent inducement claims arose out of the stock purchase agreement they had with the defendant purchasers and that the agreement's arbitration clause thus applied).

Here, Defendants contend that the loan origination agreements memorialized in the lender's commitment letters are separate and distinct from the notes and security instruments and that Plaintiffs' claims *only* relate to the lender's commitment letters. If that were true, then Plaintiffs would have been obligated to bring their action in the forum specified in each Lender's Commitment Letter. But the two agreements are not separate and distinct. The purpose of each lender's commitment letter was to establish a process for the parties to agree to an interest rate that would be incorporated into the notes and security instruments. Though the interest rate was set during the loan origination process, Plaintiffs were not obligated to pay that interest rate until they executed the notes and security instruments. Plaintiffs assert that they only agreed to the terms of the notes and security instruments because of Red Mortgage's misrepresentations during the loan origination process, and Plaintiffs seek damages to remedy the alleged fraud as well as the alleged breach of the lender's

---

and Plaintiffs' claims would not have arisen absent the notes and security instruments.

commitment letters. Their claims are an immediate, foreseeable result of both the lender's commitment letters *and* the notes and security instruments. The claims are inextricably intertwined with both agreements. The agreements are so intertwined that the lender's commitment letters spell out which agreement supersedes the other if there is a conflict between the terms of the agreements. Because Plaintiffs allege that they were fraudulently induced to enter the loan agreements, that they would not have entered the loan agreements on the same terms absent the fraud, and that they are paying an inflated interest rate under the loan agreements due to Defendants' alleged fraud, the Court finds that this controversy certainly is "related to" the security instruments and notes.

Although this controversy relates to the closing loan agreements, it also arises from the agreements in the commitment letters. Thus, conflicting forum selection clauses may apply. The parties anticipated the possibility of conflicts between the lender's commitment letters and the closing loan agreements and agreed that if there were inconsistencies between the terms and conditions of the lender's commitment letters and the loan agreements, the terms and conditions of the loan agreements would control. *E.g.*, Greystone Letter Ex. 2, General Conditions ¶ 31, ECF No. 6-2 at 15. Therefore, the forum selection clauses in the notes and security instruments apply, and Plaintiffs were

obligated to bring their claims in Georgia state courts, which they did.

Defendants nevertheless argue that the forum selection clauses in the security instruments do not require them to litigate their claims in any particular forum; Defendants contend that these clauses only prohibit Plaintiffs from objecting to being sued in the state where the property secured by the security instruments is located if Defendants sued them on the notes and security deeds. Thus, Defendants argue that they had the right to remove this action to this Court and seek a transfer under 28 U.S.C. § 1404(a). Plaintiffs argue that Defendants waived their right to remove based on the forum selection clause in the security instruments. The Court first addresses whether Red Mortgage, as a party to the notes and security instruments, waived its right to remove the action.

Ordinary contract principles govern whether a party has waived its right to remove an action. *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 (11th Cir. 1999). Defendants are correct that the first sentence of the forum selection clause in each security deed states that the *borrowers* agree that "any controversy arising under or in relation to the Note or the Security Instrument shall be litigated exclusively in the Property Jurisdiction." *E.g.*, Greystone Farms Security Deed ¶ 30, ECF No. 11-4 at 48. And the final sentence of the forum

EXHIBIT 1

selection clause states that the *borrowers* consent to service, jurisdiction, and venue in the state courts of the Property Jurisdiction. *Id.* So, an ordinary reading of those two sentences in isolation suggests that only the borrower consented to these terms. The middle sentence of the forum selection clause, however, clearly states: "The state courts . . . shall have exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the Indebtedness, or the Security Instrument." *E.g.*, *id.* This sentence is not limited to the borrower. Rather, it clearly states that all of the parties to the loan documents—Red Mortgage and Plaintiffs—agreed that the state courts would have exclusive jurisdiction over any claims arising out of or in relation to the security deeds and notes. Thus, Red Mortgage waived any right it had to remove this action to federal court. *See Ocwen Orlando Holdings Corp.*, 526 F.3d at 1381 (finding that the defendant waived its right to remove by agreeing to a forum selection clause); *Snapper, Inc.*, 171 F.3d at 1262 (same).

The Court rejects any suggestion by the remaining Defendants, who were not signatories to the agreements that contained the forum selection clauses, that they had the right to remove this action to this Court even if Red Mortgage did not. Under 28 U.S.C. § 1446(b)(2)(A), "*all* defendants who have been properly joined and served must join in or consent to the

Case 4:17-cv-00101-CDL Document 31 Filed 11/01/17 Page 17 of 20

removal of the action." 28 U.S.C. § 1446(b)(2)(A) (emphasis added). If all defendants do not consent to removal, then the removal is improper and the Court must grant a motion to remand. *See Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1049 (11th Cir. 2001)("[T]he law is well settled that in cases involving multiple defendants, all defendants must consent to the removal of a case to federal court."). In *Russell Corp.*, for example, the Eleventh Circuit affirmed the district court's remand of an action based on the defendants' failure to comply with the unanimity requirement because one of the defendants waived its right to remove and thus could not consent to removal. *Id.* at 1050. Similarly, here, Red Mortgage could not validly consent to the removal of this action, so the unanimity requirement is not met and this action must be remanded.

**II. Defendants' Motion to Stay Remand**

Defendants filed a "Provisional Motion for Protection of Its Appellate Rights" (ECF No. 28), which is essentially a request that this Court stay any remand order until Defendants have had an opportunity to appeal it. The Court finds that an extended stay is inappropriate. But, consistent with Federal Rule of Civil Procedure 62(a), the Court orders that Plaintiffs shall not take any action in the state court until fourteen days have passed after the entry of judgment in this action. Moreover, although the Clerk shall not delay entry of judgment

in this action, the Clerk is directed not to transmit this action to the State Court of Muscogee County until fourteen days have passed after the entry of judgment.

The Court recognizes that while many remand orders are not appealable under 28 U.S.C. § 1447(d), this one is. *See Russell Corp.*, 264 F.3d at 1046 (holding that a remand order is subject to appellate review if it is based on a substantive determination outside the removal process, such as interpretation of a forum selection clause). Federal Rule of Civil Procedure 62(c) governs "the power of district courts . . . to stay an order pending appeal." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The "factors regulating the issuance of a stay are . . . : (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* These factors do not weigh in favor of a stay.

The Court is confident that its decision is correct, which means that Defendants had no right to remove this action and that by doing so, Defendants disrupted the status quo as it relates to the proceedings in state court. Those proceedings have been unnecessarily delayed due to this unauthorized

removal. But even if Defendants could show a likelihood of success on the merits, the other factors weigh against a stay. Defendants will not be irreparably injured absent a stay because the appeal will not resolve any of the substantive issues in the case, which do not involve questions of federal law. The appeal will only determine where the parties must litigate those claims. The Court does not intend to minimize the importance of that issue, but it can conceive of no reason why the proceedings in the state court would be wasted if it were eventually determined that this Court erred. Presumably, the discovery in state court would be similar to the discovery that would be conducted in the federal forum. On the other hand, issuance of a stay would substantially injure Plaintiffs because a stay would further delay all progress on the merits of the case. To allow for additional delay while an appeal is litigated prejudices the rights of the Plaintiffs to have their claims heard in a "just, speedy, and inexpensive" manner. Fed. R. Civ. P. 1. Such a delay is also against the public interest.

If the Court of Appeals determines that it cannot decide an appeal of this Order before decisions are made on the merits of the claims in the state court and that this factor shifts the balance of equities in favor of a stay, then the Court of Appeals certainly has the authority to issue its own stay and direct this Court not to transmit this action to the state court

EXHIBIT 1

until it has decided the appeal or until it orders otherwise. But balancing the interests of the parties and the relative prejudice to them of a stay, this Court finds that a stay is not appropriate beyond fourteen days after judgment is entered.

CONCLUSION

Plaintiffs' motion to remand (ECF No. 8) is granted. Defendants' motion to transfer (ECF No. 6) is denied. Defendants' motion for a stay (ECF No. 28) is granted to the extent set forth above.

IT IS SO ORDERED, this 1st day of November, 2017.

S/Clay D. Land

CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA